We're going to move now to Appeal 24-1377. This is NEXT Payment Solutions v. CLEAResult Consulting. We're going to begin with oral argument from the appellant, Mr. Salario. Thank you, Your Honor, and may it please the Court. My name is Sam Salario, and I represent the appellant, NEXT Payment Solutions. I plan to talk primarily about the Defend Trade Secrets Act claim and then, time permitting, to make just a very quick point about the Illinois law unjust enrichment claim. The District Court granted summary judgment on NEXT-DITSA claim on a notion of exacting specificity that has no foundation in the text of the statute, that is unmoored from any identifiable justification, and that is unguided by any objective standard by which plaintiffs in the future can frame their trade secret descriptions and courts in the future can evaluate those descriptions. What standard do you submit we should use? The standard I submit you should use is basically two questions. On the facts of the case, does the description provide enough information to put the defendant on fair notice of what the plaintiff claims to be the secret, and is it sufficiently descriptive for a jury or other fact finder to sort out whether it meets the statutory definition? How would we apply that here? How you would apply that here would be NEXT, and this case has got kind of a more convoluted factual background than what you normally have, but NEXT identified 34 modules and 5 combinations of modules from its software program. It described what those features did. It described how they related to other features in the software program. It also said this is the part that's secret, this is the part that's public, and then it identified, by reference to Clear Result's own documents, where Clear Result wrote the programming from its expansive, unauthorized access to NEXT's back end to create the copycat feature in DSM Tracker. Here, what you would say is Clear Result definitely had notice of what NEXT was claiming the trade secret was, and a jury could be told, online scheduling model, in the context of the evidence at trial, they would hear what it does, they would hear how Mr. Peterson developed it, they would hear an expert testify about how design elements of software can constitute trade secrets and how people use reverse engineering as a substitute for source code. They would be able to take that evidence and testimony, match it up against the statutory definition, and say, yay or nay, this is a trade secret, and that's the jury's province to make that decision, or at least the fact funder's province, right? And this Court has said that time and again in cases like Life Spine, 3M, Learning Curve, whether a trade secret, whether an identified piece of information meets the statutory definition of a trade secret is a question of fact for a fact finder, precisely because it requires these kind of ad hoc determinations that need to be made in the context of all of the evidence. So following up on Judge Brennan's question, your second prong of your test is whether there was enough for the jury to make determinations regarding the statutory elements. How is the jury, with this description of this is what it does, this is where it's at, because a lot of this is essentially functionality, how is the jury going to say, does that information derive economic value from not generally being known? Well, I think in the context of this case, what they're going to hear is evidence that NeXT developed this software for a specific use for a specific industry, helping utility businesses provide on-the-ground support to residential utility customers through scheduling, appointment management, all of that. They're going to, oh, I apologize. Keep going, a minute or so. They are going to hear, and this was a fact that the District Court in its first summary judgment order found persuasive on the element that you're talking about, that clear result devoted an enormous amount of time, an enormous number of employees, and an enormous amount of resources. It was something like 169 employees and consultants over 26,000 hours, filling 900 gaps in their DSM tracker software. Like, why would you do that if there was an easy, lawful, available solution that was cheaper than that, right? And so they're going to be able to look at these features in the context of evidence like that, hearing testimony from experts and fact witnesses and say, yeah, this had economic value from being kept secret or it didn't. But what I'm having difficulty is marrying up your description, right, that essentially says this is what it does. These are the different modules it interacts with a lot of times. This is what's on the back end. This is what's on the front end. But in the end, it's describing a functionality. And where is the secret? And where is it that that secret itself has an independent economic value? How is the jury going to determine that? Well, the jury's going to put that, and I think that's the point, right, is I think your question gets at what I think is a fundamental problem in the district court's order here is that it kind of merged the requirements of identification and proof on the merits. Like, identification is just what's the thing that we're talking about? Proof on the merits is whether all of those things are true. That's going to come from evidence at trial. And I think that there is a second point in response to that, and this point is somewhat unique to this record, right? But as the case arrived before the successor judge, and frankly, as the case arrives in this court, it was cast in concrete that I just want to make sure I've got the quotation correct. It was cast in concrete that, quote, presented triable issues of fact on the elements of the statutory definition of trade secret. The predecessor judge did not reopen summary judgment for the purposes of revisiting that decision, so it was law of the case when it arrived on the successor judge's desk. And as the case comes to this court, that order, which denied in relevant part clear results motion for summary judgment, has not been cross-appealed here. And frankly, it's not even been argued as a right for any reason, ground for affirmance, although I don't think that would be the way to frame it. I mean, I think this is a cross-appeal. But that was baked in the cake, right? So all that was left for the district court to do, and all next needed to do, was identify the features that it was talking about. And it did that by saying, here's what's public, here's what's not public, here's where you stole it. And it supplemented that with a statement of facts on the second summary judgment motion that the successor judge looked at that showed, with respect to each of the 34 modules, here's where clear result identified the need for the feature, here's where clear result assigned the homework assignments where people were going to probe the FAST tool and figure out how these things worked, and then here for each of all but two of the 34 modules is where the programming assignments came from. So, you know, kind of as a function of this record, I think the first summary judgment order set the bar for what needed to be specifically identified, and all that needed to be identified were the features of the FAST tool that clear result didn't have before project renaissance and next identified those. Which actually brings me to another point, which is I think that the district court's test, which was kind of, I mean, I can't rationalize it any other way, the kind of gut sense of does this seem secret enough kind of is wrong, and it's wrong for the reason I started with, which is that it merges the merits elements of the trade secret definition with the problem of identification. And I think that gives kind of two paths to a reversal here, one of which is fairly narrow and the other of which kind of is an opportunity to say some things about the identification requirement. The narrow one is the one I just described, Your Honor, which is just the way this record works and the way this thing arrived at the successor judge's desk, this was definitely a sufficient description and requiring more served absolutely no purpose in view of the prior determination that there were fact issues around whether this met the statutory definition. One way to look at that is if the secret got out, would there be damage? So if all 34 modules were released, how would next be damaged? Next would be damaged because if all 34 models were released, everything that made this thing special, that made it work for clear results utility customers, that made clear results utility customers like it, that enabled it to expand that program for the use for those utility customers, that goes away, right? It's what happened here. Next is shunted aside and clear result has its own program that it derived from next's work. And that's a conclusion. I think the point of it is you have to unpack that conclusion as to what made it special, what made it secret. That's the nub of the case, right? That's correct. But what made it special and secret is a merits question for development at trial. I mean, I just don't see how. And that's the problem. And frankly, you look at a case like IDX. That's a case where the plaintiff says all my software is confidential. Here's the manual. That's the trade secret. Well, you kind of know in a summary judgment setting that that can't be right. It can't be that this thing that everybody sits in front of, that every single aspect of it is trade secret. And so that enables you at the identification stage to say kind of this doesn't cut it, right? That's not what this description was. This description isolated out the public-facing functionalities that any residential utility customer would see and limited what it claimed to be the trade secret to only what people who had agreed to maintain it as confidential and use it for only work-related purposes could see. Are there aspects of the software that are proprietary information that are not a trade secret? I think that that really goes to the unjust enrichment claim. And I think that the words proprietary information have probably taken on too much significance. I think it's that they're susceptible of categorization as both, right? I mean, trade secrets are just one subset of intellectual property. So if it doesn't fall within the definition, it still was something valuable that clear result took from next. Otherwise, it wouldn't have invested all the time and effort and money that it invested in taking it. So is it fair to say then that proprietary information is a subset of trade secret? Or what's your position with regard to the relationship between the two? I think maybe if you were looking at a Venn diagram, there's circles next to each other that overlap pretty much. I mean, maybe one is slightly bigger than the other. But on the unjust enrichment claim, just so I don't – well, I'm actually into my rebuttal time. Go ahead. That's fine. So I'm not going to lose it. On the unjust enrichment claim, what I would just say is I think the other side kind of characterizes it, that the district court's holding as alternative justifications, right? And that's so they can take advantage of the abuse of discretion standard that applies to the kind of this is too late part of it. I don't really think that's a fair reading of the district court's order. I think what he was saying is if this claim is new, then it's new and it's out. And if it's old, it falls with the trade secrets claim. So I think this case can be – I think the unjust enrichment claim can be resolved on the kind of what do we think about Cleary and does Cleary's rule apply when it's not conduct that's at issue grounds that we raise in the brief. Thank you, Mr. Salerio. Ms. Assay, we'll now move to you for the argument from the appellee. Thank you, Your Honor. May it please the court, I'm Kristen Assay on behalf of the appellee, Clear Result Consulting. The trial court properly entered final judgment in Clear Result's favor on next trade secret and unjust enrichment claims, and this court should affirm. There are three key issues I'd like to cover today based on the argument. First, the standard for identifying trade secrets at summary judgment and why next did not meet that standard. Second, I'd like to correct the record with respect to Judge Castillo's initial order on summary judgment with respect to what was remaining of the trade secret claim. And then third, why the district court properly exercised its discretion in granting the motion in limine and precluding next from raising a new theory of unjust enrichment three years after discovery had closed. So first, with respect to trade secrets, at summary judgment, a plaintiff is required to demonstrate concrete secrets. As this court said in the Rexa, Inc. v. Chester case, that requires a high level of specificity to enable the trial court to assess whether the evidence of the alleged trade secret meets the statutory elements, such that a reasonable jury could find if the plaintiff presented sufficient evidence to get to a jury. What that means is that a trade secret plaintiff must describe what the trade secrets are, not just what they do. And in this case, that meant not just what the software does, but how it does it. What is secret and special about it? That rule comes direct from this court's decision in IDX, which is controlling here. There, like here, the district court granted summary judgment on the plaintiff's trade secret claims for failing to specify them. The district court held that listing product functionalities is not enough. If it does not separate out and explain how it performs those functionalities. This court affirmed that decision in full, at least with respect to the trade secret identification, stating that a description of methods and processes or the interrelationship of software features is not enough. And it can't be enough because with software, users necessarily see some of the features or functionalities of that software. So what this court said could have been a trade secret and could have been specific enough, was the code or algorithms that enabled the software in IDX to perform, in that case it was real-time error checking for banking software. That was the benefit, the feature that made the software special. But the plaintiff never separated out what that algorithm was, and therefore the entire trade secret failed. But they don't have to give the source code, right? They do not have to give the source code, and in this case that's because they admitted, or the plaintiff admitted that ClearResult never even had access to the source code. So what's missing here is explaining what was the trade secret. If it's the idea of these features, that can't be the trade secret because this software was already being used and the functionality was observable by any user. If it was how it performed those features, which we have assumed from the beginning of the case was the trade secret, they never described what it is. As Judge Seeger said in his summary judgment decision, it's like claiming your secret is an apple pie and never providing the recipe. The standard that the plaintiff has asked this court to apply, the notice and jury comprehension standard, is effectively a lower standard, a standard that would apply at the motion to dismiss stage where a plaintiff is only required to describe their trade secret generally to help frame discovery. But once it becomes summary judgment, they must demonstrate concrete secrets to enable the court to assess that trade secret against the statutory framework. I'll note that the primary case that the plaintiff relies upon for the notice standard, which is the Gavodin case from the Third Circuit, that involved fragrances. And there the court said, yes, notice is required so that the defendant knows how to defend themselves against the trade secret. But for those fragrances, the court said, you can't just tell us what the fragrance names are or give us a list. You have to give us the formula, the recipe. So the only aspect of those trade secrets that were allowed to survive summary judgment were the ones where the recipe was given. So next I'd like to move on to Judge Castillo's initial decision. What Judge Castillo said, and at that point in the case, the plaintiff had asserted that its entire software, the next system, the back end, the rules, the modules, just the entire software program was the trade secret. It described it very, very broadly as software for improving workflow automation. The district court said that was not enough. You can't rely on generic features or broad descriptions of business methods and essentially described plaintiff's interrogatory response as five pages of jargon. What the court left open was the possibility that the plaintiff could describe concrete secrets with respect to the web-based software application, the fast tool. And that was only because Judge Castillo noted that that was the aspect of the case for which the plaintiff presented a theory of misappropriation. They had not been alleging that any other aspect of the software had been accessed by Clear Result. So that's why the court said it's possible I will allow summary judgment, I'll deny summary judgment with respect to this narrow perspective possibility of features of the fast tool that did not exist in DSM Tracker at the time that Clear Result transitioned from the fast tool to DSM Tracker. But I would encourage the court to read Judge Seeger's summary judgment decision that's page 10 of the appendix, footnote 2, or his decision denying the motion for reconsideration at pages 222 and 223 of the appendix, where he explains to the extent that there is any uncertainty about what Judge Castillo did in the first summary judgment, that he was only granting the plaintiff the option if they could come forward. And Judge Castillo made that clear himself in the March 26, 2019 hearing, when Clear Result moved to compel a further interrogatory response specifying the trade secrets. And Judge Castillo said, I've looked at this, and that was after the plaintiff had already supplemented once. I've looked at your trade secret description. It's not enough. And to the point of the jury comprehension, Judge Castillo said, no jury is going to be able to understand this. I'm requiring you to supplement a second time. So what Judge Seeger, when he took over the case in reviewing the record, and this is, again, specified in his order denying the motion for reconsideration, explained that there were two plausible readings of Judge Castillo's earlier decision. Either he did think that the features were sufficient enough to move forward, and then changed his mind once the plaintiff submitted their supplemental interrogatory response, and said it's still not enough. Or, as Judge Castillo said himself at that March, 2019 hearing, as I, consistent with my earlier ruling, what you've described is not enough, because you're still only describing the modules by what they do at a high level description. So now I'm going to explain why the plaintiff did not meet that burden, and the standard that this court should apply. Again, I'm going to note that the plaintiff had at least three opportunities to describe its trade secrets, so this is not a circumstance where they were won and out. And I would encourage the court to look at page three of plaintiff's reply brief, where they purport to describe the entirety of the online self-scheduling module, which is purported trade secret number one. As the plaintiff is arguing, that purports to describe what the module does, and how it does it in some unique manner. But all that that says is present real-time appointment availability using a number of inputs, and using certain data, and then applying eligibility rules and generating logs of appointments, so that the utility company can perform administrative audits. That does not describe a concrete secret, it is too general, and it never describes the how. How does it use the inputs? How does it use the data? What are the rules that are being applied, and how does it apply it? Again, if it's how, if the trade secret is the how, it's not specified. If it's the idea of self-scheduling, that's not a trade secret, and the district court could probably make that determination. I'd also encourage the court to consider the second basis with which Judge Seeger granted summary judgment on the trade secret claim, and that's that the plaintiff never put forth evidence that the trade secrets actually exist in their software, because all they submitted to the court was evidence that the features existed in ClearResult software. They relied upon ClearResult's software development evidence, but never put forth evidence that those features existed in the FAST tool to begin with. And at summary judgment, its opportunity to present that evidence was lost. So now I'd like to turn to the unjust enrichment claim. The trial court properly rejected NeXT's attempt to raise a brand new theory of unjust enrichment for four separate reasons, and this court can affirm on any of them. Today I'd like to focus on the first reason, the factual basis, which was that NeXT had never pled or pursued a stand-alone theory of unjust enrichment based solely on the misuse of proprietary information during over four years of litigation. To overturn that finding, this court would need to find clear error, and the plaintiff has not even argued that clear error exists. When making that finding, the trial court focused on the words that the plaintiff used in the operative complaint. That's the verified amended complaint at docket 36. As Judge Segar correctly concluded, plaintiffs used the phrase proprietary information only four times, three of those being in the unjust enrichment count itself, and each time directly in conjunction with trade secret misappropriation. The phrase was that clear result was unjustly enriched through its misappropriation of NeXT's trade secrets and proprietary information, never or. And then throughout the history of the case, plaintiff never argued that there was a separate stand-alone theory based solely on proprietary information. Again, Judge Segar went through the record, multiple filings in this case, dispositive motions, status reports, even plaintiff's description of its damages in a pretrial filing. In each of those cases, it was unjust enrichment based on only two separate theories, an unpaid services theory, which was that if certain statements of work were not enforceable contracts, which was part of the breach of contract theory, as an alternative, if they were not enforceable stand-alone contracts, then there was an unjust enrichment claim in the alternative. The second theory was misappropriation of trade secrets, and that is what had been argued throughout the history of the case until this new theory arrived in June of 2021. So although plaintiff is focusing on the argument under the O'Malley case from the intermediate appellate court that Illinois law does allow a stand-alone claim for unjust enrichment, even if all the other claims are dismissed, the court need only get to that argument if it rejects the factual findings about the unjust enrichment claim being unpled, highly prejudicial to be raised three years after fact and expert discovery closed, would need to reject Judge Segar's finding that it was contrary to two rounds of summary judgment briefing, and that it was too vague and too difficult for a jury to comprehend because, like the trade secret claim, plaintiff had never described what the proprietary information was in any way so that a jury could find unjust enrichment. If the court has no other questions, then I'll briefly conclude. The district court applied the correct legal standards in granting summary judgment on the DTSA claim and in granting the motion in limine on the unjust enrichment claim, and this court should affirm. Thank you. Thank you, Ms. Asai. Mr. Salerio, we'll move back to you for rebuttal argument. Thank you, Your Honor. On the question of what did Judge Castillo decide in the first order, I want to make clear what you didn't hear from my colleague on the other side was that his merits determinations that there were triable fact issues on the three elements of a statutory trade secret was ever revisited. That's because it wasn't. He made a specificity holding, and here's what he said at Appendix 192. The features of the FAST tool that DSM Tracker did not have, including the FAST tool's industry tracking and inventory management features, are specific enough trade secrets to survive summary judgment. The court and a jury will be able to analyze whether defendant misappropriated specific features that were in the FAST tool but missing from DSM Tracker and later added to DSM Tracker. What he's saying is those are specific enough, but then he comes back and says, I think what I said in the summary judgment order is too general for a jury, do better, they don't like our supplement, they move to compel, and what they ask the court to compel is a description of what the quote-unquote features are that he claimed trade secret protection over and quote-unquote what those features do. They then turn around and say what they asked for isn't enough. I think I'm just about out of time, so that's where I'm going to end. Thank you, Mr. Solario, and thank you, Ms. Assay, the case will be taken under review.